UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MALIBU MEDIA LLC,

                Plaintiff,

v.                                                       Case Number 13-12178
                                                       Honorable Thomas L. Ludington

JOHN DOE,

                Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO QUASH**

The question in this copyright infringement action is whether to quash the subpoena issued to Defendant John Doe's internet service provider. For the reasons that follow, the question will be answered in the negative.

**I**

**A**

This case arises out of allegations of unauthorized copying and distribution of protected works via BitTorrent. To assess the parties' arguments, some understanding of how this technology works is helpful. We begin with the relevant vocabulary:

> *Internet Protocol* (IP): The system of communication standards that ensures that data packets transmitted over the internet reach their intended destinations.[1]
>
> *IP Address*: The unique identifying number of a device connected to the internet.[2]
>
> *Transmission Control Protocol/Internet Protocol* (TCP/IP): The standard set of protocols for transmitting data over the internet.[3]

---

[1] *See generally Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 163 (E.D. Mich. 2012), *report and recommendation adopted*, 11-15232, 2012 WL 4498373 (E.D. Mich. Sept. 28, 2012).

[2] *See generally* Stephanie Crawford, *What is an IP Address?*, HowStuffWorks.com, http://computer.howstuffworks.com/internet/basics/question549.htm (last visited July 31, 2013).

[3] *See generally id*.

*File*: A collection of related data packets treated as a unit.[4]

*Hash Identifier*: A 40 character alphanumeric string that forms a unique identifier of an encoded file.[5]

*BitTorrent*: A peer-to-peer file sharing protocol.[6]

*Peer*: A BitTorrent user.[7]

*Initial Seeder*: A BitTorrent user who first takes a particular file (such as a movie), breaks it into pieces, encodes the pieces with hash identifiers, creates a torrent file with the data about that file and its tracker, and makes the complete file available to other BitTorrent users.[8]

*Swarm*: A group of peers sharing a particular file (identified by its unique hash identifier). A swarm has two types of peers — "leechers" and "seeds." It bears reiterating: to constitute a swarm all of the peers must be sharing the same file (identified by its unique hash identifier).[9]

*Leecher*: A peer in the process of downloading the file from the other peers. As soon as a leecher downloads new content (a piece of the file), the leecher begins sharing its content with the other leechers in the swarm.[10]

*Piece*: A one-quarter megabyte size part of a file being shared via BitTorrent (except for the last, smaller piece, which is the size of the remainder of the file).[11]

*Tracker*: A server containing an updated list of peers in the swarm. It allows a peer to learn about other peers sharing a particular torrent and join the swarm.[12]

---

[4] *See generally Patrick Collins*, 282 F.R.D. at 163.

[5] *See generally id*.

[6] *See generally Third Degree Films v. Does 1-36*, 11-CV-15200, 2012 WL 2522151, at *1 (E.D. Mich. May 29, 2012).

[7] *See generally Patrick Collins*, 282 F.R.D. at 163.

[8] *See generally Patrick Collins*, 282 F.R.D. at 163.

[9] *See generally* Sean B. Karunaratne, Note, *The Case Against Combating Bittorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits*, 111 Mich. L. Rev. 283, 289 (2012).

[10] *See generally* Annemarie Bridy, *Is Online Copyright Enforcement Scalable?*, 13 Vand. J. Ent. & Tech. L. 695, 701 (2011).

[11] *See generally Patrick Collins*, 282 F.R.D. at 163.

> *.Torrent file*: The hub of the BitTorrent system, a *.torrent* file is a small file containing the file name, the IP address of the tracker, the number of and size of the pieces, and the hash identifier unique to the pieces of that particular torrent file.[13]

BitTorrent, as this vocabulary notes, is a peer-to-peer file sharing protocol. To download a file, a peer performs six steps:

1. Install BitTorrent (or have done so already).
2. Surf the web.
3. Click on a link to a *.torrent* file.
4. Select where to save the file locally, or select a partial download to resume.
5. Wait for download to complete.
6. Tell downloader to exit (it keeps uploading until this happens).

Bram Cohen, *The BitTorrent Protocol Specification*, BitTorrent.org (June 25, 2009), http://www.bittorrent.org/beps/bep_0003.html, *cited in Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 163–64 (E.D. Mich. 2012).

One key to BitTorrent is reciprocity. "To keep the torrent operating at maximum capacity, the BitTorrent protocol uses a process called pipelining. Every active peer in a torrent maintains a continuously refreshed queue of requests for pieces, so that no connection is ever left idle after any one piece is downloaded." Annemarie Bridy, *Is Online Copyright Enforcement Scalable?*, 13 Vand. J. Ent. & Tech. L. 695, 702 (2011) (footnote omitted). A second key is decentralization — which makes it a tough nut to crack for copyright holders:

> Data is not stored on a central server. Rather, a user downloads the file in discrete segments from many different users who send data directly to one another. While trackers coordinate and assist peers in locating a swarm, the tracker itself sends out very little data. This makes BitTorrent an extremely efficient mechanism for transferring large files and at the same time, it insulates the protocol itself from anti-piracy efforts because there are no central servers to enjoin from unlawfully

---

[12] *See generally Pac. Century Int'l, Ltd. v. Does 1-48*, C 11-3823 MEJ, 2011 WL 4725243, at *3 (N.D. Cal. Oct. 7, 2011).

[13] *See generally Patrick Collins*, 282 F.R.D. at 164.

> distributing copyrighted content. Thus, when copyrighted data is transmitted via BitTorrent, the copyright holder is largely limited to holding the individual file sharers liable for infringement.

Sean Karunaratne, Note, *The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits*, 111 Mich. L. Rev. 283, 290 (2012) (quotation marks omitted) (footnotes, brackets, and quotation marks omitted) (quoting *Diabolic Video Prods., Inc. v. Does 1-2099*, No. 10-CV-5865-PSG, 2011 WL 3100404, at *2 (N.D. Cal. May 31, 2011)).

Tough nut or not, copyright holders — including a number of copyright holders of pornographic works — have recently been attempting to crack down on alleged infringement.[14] This practice has drawn sharp criticism from some courts and commentators, particularly when the copyrighted work is pornographic and the copyright holder is a "copyright troll." *E.g.*, *Ingenuity 13 LLC v. John Doe*, 2:12-CV-8333-ODW JCX, 2013 WL 1898633, at *1 (C.D. Cal. May 6, 2013) ("Plaintiffs have outmaneuvered the legal system. They've discovered the nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable defense costs. And they exploit this anomaly by accusing individuals of illegally downloading a single pornographic video."); *cf.* Richard Posner, *Patent Trolls*, Becker–Posner Blog (July 21, 2013), *available at* http://www.becker-posner-blog.com/2013/07/patent-trollsposner.html.

**B**

The plaintiff in this case, Malibu Media, LLC, "is *not* what has been referred to in the media and legal publications, and in the internet blogosphere, as a 'copyright troll' — i.e., a non-producer who merely has acquired the right to bring lawsuits against alleged infringers. Rather, Malibu is an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works." *Malibu Media, LLC v. John Does 1, 6, 13, 14*, CIV.A.

---

[14] *Cf.* Adam Aft et al., *Web 2.0 Citations in the Federal Courts*, 3 J.L.: Periodical Laboratory of Leg. Scholarship 31, 32 n.4 (2013) (observing that BitTorrent was addressed in 271 federal court opinions in 2012 alone).

12-2078, 2013 WL 3038025, at *1 (E.D. Pa. June 18, 2013) (footnote omitted) (emphasis in original).

A number of Plaintiff's copyrighted works have evidently been making the rounds on BitTorrent. Plaintiff wants to put a stop to it. So Plaintiff has hired a forensic investigator: IPP, Limited.

From March 22, 2013 to April 8, 2013, the complaint alleges, IPP "established a direct TCP/IP connection with Defendant's IP address." Compl. ¶ 17. A device using Defendant's IP address was a part of swarms copying and distributing complete copies of 10 of Plaintiff's copyrighted works. *See id*. ¶¶ 18–21; *id*. Ex. A.

From Defendant's IP address Plaintiff downloaded bits of each of Plaintiff's 10 works.[15] Compl. ¶ 20. And from the swarm, Plaintiff downloaded the complete work (meaning that the device on Defendant's IP address had copied and was distributing the complete work to the swarm as well). *Id*. This litigation ensued.

C

In May 2013, Plaintiff filed a complaint against John Doe in this Court alleging direct copyright infringement of Plaintiff's works. The same day, Plaintiff moved for leave to file third-party subpoenas on Defendant's internet service provider to learn the identity of the subscriber of IP address 24.247.208.185. The motion was granted.

Defendant now moves to quash the subpoena issued to his internet service provider.

---

[15] Specifically, on March 22, IPP downloaded from Defendant's IP address "Vacation Fantasy." Compl. Ex. A. On March 27, "Lovers in Paradise." *Id*. On April 6, "Angie VIP Lounge," "Tiffany Teenagers In Love," and "Anneli Dream Girl." *Id*. On April 7, "The Masseuse," "Red Hot Summer," "Blonde Ambition," and "Flexible Beauty." *Id*. And on April 8, "Sacred Romance." *Id*.

## II

### A

Defendant first asserts that "the complaint fails to allege any volitional act by defendant that amounts to copyright infringement. Instead, plaintiff alleges that defendant 'controls' his ISP and that he is 'the most likely infringer' without any basis for such allegation." Def.'s Br. 1.

Effectively, Defendant is arguing that the complaint should be dismissed for not stating a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Yet accepting the allegations in the complaint as true, as this Court must on a Rule 12(b)(6) motion, it states a prima facie case of copyright infringement.

Section 106 of the Copyright Act provides that the copyright owner "has the exclusive rights . . . (1) to reproduce the copyrighted work in copies . . . [and] (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of the ownership, or by rental, lease, or lending." 17 U.S.C. § 106.

To plead a prima facie case of copyright infringement of a motion picture, a plaintiff must allege that: (1) it owns a valid copyrights in the motion picture; and (2) the defendant violated one or more of the exclusive rights that § 106 grants copyright holders. *Columbia Pictures Indus., Inc. v. T & F Enters., Inc.*, 68 F. Supp. 2d 833, 837 (E.D. Mich. 1999) (citing *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985)).

Here, the complaint alleges both elements. Paragraph 29 alleges that Plaintiff owns a copyright for the 10 works that Defendant copied and distributed. Paragraph 30 alleges that Defendant violated the exclusive rights that § 106 grants Plaintiff by distributing Plaintiff's copyrighted work without Plaintiff's authorization. These factual assertions plausibly state a claim for relief on which relief may be granted.

Defendant's argument to the contrary — that the complaint doesn't state a claim because it "fails to allege any volitional act by defendant" — lacks merit. The argument is presumably based on paragraph 24 of the complaint, which asserts: "As the subscriber in control of the IP address being used to distribute Plaintiff's copyrighted movies, Defendant is the most likely infringer. Consequently, Plaintiff hereby alleges Defendant is the infringer."

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard," the Supreme Court cautions, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Here, as noted, the complaint alleges that Defendant exercises control over the IP address in question. Defendant is the person who purchased an internet subscription and was assigned the unique IP address at issue. And that unique IP address is being used to distribute Plaintiff's copyrighted movies. While there is a possibility that a third party has somehow gained access to Defendant's IP address, the more likely explanation is that it is Defendant who is distributing Plaintiff's works. This is all that is required to plausibly state a claim for relief on which relief may be granted.

**B**

Defendant's second argument is that "typically, these suits are designed to intimidate innocent subscribers and force them to settle — regardless of liability — simply to avoid a public accusation that they illegally downloaded pornographic material." Def.'s Br. 1.

Implicitly, Defendant appears to be making a First Amendment argument. *See Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 562 (S.D.N.Y. 2004) ("The Supreme Court has recognized that the First Amendment protects anonymous speech. . . . It is well-settled that the First Amendment's protection extends to the Internet"); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) ("To the extent that anonymity is protected by the First Amendment, a court should quash or modify a subpoena designed to breach anonymity.").

But, as the Second Circuit cogently observes: "The First Amendment does not . . . provide a license for copyright infringement. Thus, to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (citations omitted) (citing *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 555–57 (1985); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 849 (11th Cir. 1990); *Sony Music*, 326 F. Supp. 2d at 563).

Here, accepting the allegations in the complaint as true for present purposes, that is precisely what is happening. *See Sony Music*, 326 F. Supp. 2d at 565. Moreover, Plaintiff writes that it "does not object to allowing Defendant to remain anonymous through the end of discovery so long as Plaintiff is not prevented from conducting discovery in an orderly and efficient manner." Pl.'s Resp. to Def.'s Mot. to Quash 5. Defendant's argument that the subpoena should be quashed because it is simply an in terrorem strategy lacks merit.

**III**

Accordingly, it is **ORDERED** that Defendant's motion to quash (ECF No. 6) is **DENIED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: July 31, 2013

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 31, 2013.

s/Tracy A. Jacobs  
TRACY A. JACOBS